The People of the State of New York, Respondent, *v.* The Mutual Trust Company, Appellant.

Defendant, by its charter, is authorized "to establish a public exchange and mart for receiving deposits of and transferring earnest moneys, stocks, bonds and other securities * * * and for the procurement and making of loans on the same * * * guaranteeing the payment of bonds and other obligations." *Held*, that it was a "loan, mortgage, security, guaranty or indemnity company," and a corporation "having the power and receiving money on deposit" within the meaning of the act of 1874 (§ 1, chap. 324, Laws of 1874), requiring every such corporation to make a report semi-annually to the superintendent of the banking department; and that upon its refusal to make such reports, an action was properly brought by the attorney-general to dissolve the corporation.

(Argued April 17, 1884; decided April 29, 1884.)

Appeal from an order of the General Term of the Supreme Court, in the third judicial department, made the first Tuesday of May, 1883, which denied a motion for a new trial made

upon exceptions under section 1001 of the Code of Civil Procedure. This action was brought to procure a judgment dissolving the defendant on the ground, among others, of its refusal to make the semi-annual reports required by the act, chapter 324, Laws of 1874.

The material facts are stated in the opinion.

*Samuel Hand* for appellant. The defendant is not a moneyed corporation. (1 R. S. 599, § 31.) It has no authority to issue notes or to make discounts. (1 R. S. 600, § 4; *F. Ins. Co.* v. *Ely*, 2 Cow. 678.)

*Dennis O'Brien*, attorney-general, for respondent. The defendant was subject to the jurisdiction of the banking department. (Laws of 1868, chap. 279, §§ 8, 9, 10; Laws of 1874, chap. 324, §§ 1, 2, 3, 5, 8.) The right to amend, alter or repeal the franchises granted to the defendant was expressly reserved by the legislature in its charter. (2 R. S. [7th ed.] 1531.) The intention of the legislature to alter defendant's charter can be effectuated by a general act; it uses language which clearly covers and includes the defendant. ( *White* v. *S. R. R. Co.*, 14 Barb. 559, 560; *S. & S. P. R. Co.* v. *Thatcher*, 11 N. Y. 102; *N. R. R. Co.* v. *Miller*, 10 Barb. 260, 277; *Hickman* v. *Pinkney*, 81 N. Y. 211; *Pratt* v. *Munson*, 84 id. 382.) Actions by the people are subject to the same limitations as actions by private persons. (Code of Civ. Pro., § 389; *Burbank* v. *Fay*, 65 N. Y. 57, 66.)

EARL, J. The defendant was organized by chapter 279 of the Laws of 1868, by the name of the Public Exchange (which has since been legally changed to the present name), "with power to establish and conduct, in the city of New York, an exchange for the daily meeting of merchants, bankers and tradesmen, and for other purposes." It is provided by section 8 that "the said corporation shall have power to establish a public exchange and mart for receiving deposits of and transferring earnest moneys, stocks, bonds and other securities, and

valuable property; for the safe-keeping of earnest moneys, stocks, bonds and other securities and valuable property, and for the convenient delivery and interchange of the same between the dealers therein, and for the procurement and making of loans on the same; for the intermediary adjustment of balances of accounts between its members and dealers; for the purchase and sale of securities and coin, guaranteeing the payment of bonds or other obligations, and for the transaction and adjustment of such other business incident thereto as may be provided for in the by-laws of said corporation." Section 9 provides that it shall be lawful for the corporation to purchase, lease, hold and convey real estate as follows: "1. Such as shall be necessary for the convenient transaction of its business, and that of its members and dealers; 2. Such as shall be mortgaged to it in good faith by way of security for loans made by or moneys due to said corporation; 3. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings; or 4. Such as it shall purchase at sales upon judgments, decrees or mortgages held or guaranteed by said corporation." Section 10 provides that "the corporation may loan to its members and dealers such of its funds as may by the trustees be deemed prudent; may borrow money of others and reloan the same, and may give and receive suitable obligations for the same; but said corporation shall not charge or receive more than the legal rate of interest for the use of such moneys, or a higher rate of commission than is prescribed by law. The said corporation may, however, invest its own funds in notes, bonds, bills of exchange or other securities made in or issued by any State in the Union, and receive the rate of interest allowed by the laws of the State in or by which such notes, bonds, bills of exchange or other securities are so made or issued. And whenever it shall be found that the convenience of members or dealers may be subserved thereby the different branches of business of the said corporation may, upon the votes of a majority of all the trustees at a regular meeting, be conducted in separate buildings." These are very extraordinary powers which were conferred upon this

corporation; and it is quite difficult to place the precise limit upon the business which it is authorized by the act to do.

The act chapter 324 of the Laws of 1874, entitled "An act relative to moneyed corporations, other than banks, institutions for savings and insurance companies," provides in its first section, that "every trust, loan, mortgage security, guaranty or indemnity company or association, and every corporation or association having the power and receiving money on deposit, existing or incorporated under any law of this State, or any corporation or association not incorporated under the laws of this State, which receive deposits of money or assume obligations in this State (other than banks, institutions for savings, and insurance companies), shall semi-annually make a full report in writing of the affairs and condition of such corporation at the close of business on the last business days of June and December in each year, to the superintendent of the banking department, verified by oath," etc. Section 5 provides that whenever any corporation shall refuse or neglect to make such report as is hereinbefore required, the attorney-general may institute such proceedings against such corporation as are required by law in the case of insolvent corporations, or such other proceedings as the nature of the case may require.

The defendant refused to make the report specified in the act of 1874, on the ground that it was not one of the corporations required by that act to report; and the sole question for our determination is whether it was bound to make the report.

We are of the opinion that it was bound to make the report. The language of section 1 of the act of 1874 is very broad and general; and the corporations required to report are "every trust, loan, mortgage security, guaranty or indemnity company or association, and every corporation and association having the power and receiving money on deposit." We think this company was, within the meaning of the act, one authorized to receive deposits of money. It was expressly authorized, and hence section 4, title 3, chapter 18, part 1 of the Revised Statutes has no application. It could receive deposits of earnest money to any amount. The amount of money thus received

for the various purposes for which it was authorized to be deposited could be very large.    It was also a guarantee company within the meaning of the act. It was authorized to guarantee the payment of bonds and other obligations.    That was a portion of the business which it was authorized to do.    It was authorized also to loan money, and it could loan its money on mortgage security.    Hence it was a loan company, and a mortgage security company within the meaning of the act of 1874. If this had been exclusively a deposit company, or a loan company, or a guarantee company, or a mortgage security company, thus confined to one kind of business, it could not be doubted that it would come within the act of 1874; but the fact that its powers are so general, it being allowed to do all these various kinds of business, certainly cannot take it out of the operation of the act.    It is within the policy, and we think within the letter of the law, and hence the disposition made of the case by the court below was right; and its judgment should be affirmed, with costs.

All concur.

Judgment affirmed.